NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CINDY WRIGHT,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Civil Action No.: 2:16-cv-00769 (CCC)<br><br><br>OPINION |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Before the Court is Plaintiff Cindy Wright's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability benefits ("DIB") and supplemental social security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

**II.    BACKGROUND**

    **A.    Procedural Background**

Plaintiff applied for DIB on June 7, 2012, and for SSI on December 26, 2012, alleging disability as of March 24, 2012. Tr.[1] at 46. The applications were denied initially and upon reconsideration. *Id.* Plaintiff requested a hearing before an ALJ to review the application *de*

---

[1] "Tr." refers to the certified record of the administrative proceedings. ECF No. 7.

novo. *Id.* at 147-48. On May 27, 2014, a hearing was held before ALJ Barbara Dunn. *Id.* at 46-58. ALJ Dunn issued a decision on August 22, 2014 finding Plaintiff was not disabled as defined by the SSA. *Id.* at 58. On December 10, 2015, the Appeals Council denied Plaintiff's request for review of ALJ Dunn's decision. *Id.* at 1. Plaintiff instituted this action on May 25, 2016. ECF No. 1.

### B. Factual Background

Plaintiff was born on April 20, 1981. Tr. at 56. She has an 8th grade education and has previously worked full-time at a daycare center and part-time in a warehouse. *Id.* at 51. Plaintiff claimed disability due to back pain, herniated disc, high blood pressure, and depression. *Id.* at 89. She has reported hearing voices since 2001 related to miscarriages she has suffered. *Id.* at 52. Plaintiff takes Xanax and Paroxetine for anxiety, Trazadone and Prazosin to help her sleep, and Naprosyn for pain. *Id.* at 78-79.

During the hearing, Plaintiff testified that she lives with her two children. *Id.* at 76. Their father, Plaintiff's boyfriend, helps out with the children and around the house. *Id.* at 77. Plaintiff's parents also visit and assist her. *Id.* at 77-78. Although Plaintiff has friends, and is able to take the bus alone, she told a state agency psychologist that her anxiety and depression have left her unable and unwilling to socialize. *Id.* at 53.

Plaintiff worked for five years at a daycare center, which closed for financial reasons in December 2011. *Id.* at 69. She testified that working with the children eased her depression by keeping her busy but that anxiety has made her unable to work since March 2012, when she was injured as a passenger on a bus. *Id.* at 69-71.

### C. Summary of the Relevant Medical Evidence

Plaintiff was seen in the emergency room after the bus accident on March 24, 2012. *Id.*

at 52, 328. She complained of lower back pain and tenderness in her right shoulder. *Id.* X-rays showed straightening of the cervical spinal curve but were otherwise normal, and Plaintiff was prescribed Naprosyn and Flexeril and was advised to avoid heavy lifting. *Id.* at 52, 331-33. On March 27, 2012, Plaintiff returned to the ER for neck, shoulder, and back pain. *Id.* at 52, 319. The records indicate that her range of motion and thoracic spine were normal. *Id.* She was again prescribed Naprosyn and Flexeril and was told to avoid heavy lifting. *Id.* at 52, 321. In May 2012, Plaintiff underwent an MRI, which showed some positive results, including disc herniation and left foraminal stenosis. *Id.* at 52, 344. A June 26, 2012 EMG study, which was performed due to neck and back pain, revealed radiculopathy on Plaintiff's right side. *Id.*

On August 20, 2012, Dr. Eric Howard Kuo examined Plaintiff's brain MRI and reported it to be unremarkable, showing no signs of a stroke. *Id.* at 53, 469. He examined Plaintiff's lumbar spine MRI and reported that it showed mild disc disease. *Id.* Physical examination showed a normal range of motion, no tenderness, and normal sensation in the upper and lower extremities. *Id.* Dr. Kuo recommended continuing physical therapy. *Id.*

In August 2012, Plaintiff was referred to Dr. Boqing Chen. *Id.* at 387. Dr. Chen diagnosed severe neck and back pain with radicular pain. *Id.* at 53, 400. In September 2012, Dr. Chen gave Plaintiff lumbar epidural steroid injections. *Id.* at 421-22. Plaintiff told Dr. Kuo in November 2012 that the injection had been helpful. *Id.* at 473. On March 5, 2013, Dr. Chen stated on a Medical Certificate that Plaintiff was disabled as of March 24, 2012 and was unable to perform her regular work due to lumbar radiculopathy. *Id.* at 394.

In an August 6, 2012 report, chiropractor Dr. Thomas A. Debari indicated, *inter alia*, that Plaintiff could rarely lift and carry up to twenty-five pounds, occasionally lift and carry up to twenty pounds, frequently lift and carry up to ten pounds, stand or walk for two to four hours in

an eight-hour day, and sit for two to four hours in an eight-hour day. *Id.* at 573.

On August 6, 2013, Dr. Doris Koduah examined two MRI studies and an EMG that had been performed on Plaintiff. *Id.* at 485. Dr Koduah reported "no evidence of lumbar herniation" on the two studies and "no evidence of pathology." *Id.*

Plaintiff began treatment at Mount Carmel Guild on December 13, 2012. *Id.* at 434. She reported auditory and visual hallucinations, feeling overwhelmed, difficulty focusing, and crying constantly. *Id.* at 434. Plaintiff was diagnosed with dysthymic disorder[2] and was given a Global Assessment of Functioning ("GAF") score of 50-55.[3] *Id.* at 440.

An October 30, 2013 report by Mount Carmel Guild nurse practitioner Olayinka Aramide stated that Plaintiff had major depressive disorder with psychotic features, with a GAF score of 53. *Id.* at 451. Ms. Aramide found that Plaintiff had marked limitation in multiple areas, including: maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance and being punctual within customary tolerances; sustaining an ordinary routine without supervision; working in coordination with or proximity to others without being distracted by them; completing a normal workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 451-58. Ms. Aramide's report stated

---

[2] A diagnosis of dysthymic disorder requires "[d]epressed mood for most of the day, for more days than not, as indicated by either subjective account or observation by others, for at least two years," and problems with at least two of the following: eating, sleeping, energy, self-esteem, concentration, or hopefulness. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Health Disorder: DSM-5, F34.1 (5th ed. 2013).

[3] A GAF score is a "numerical summary of a clinician's judgment of [an] individual's overall level of functioning." *Rivera v. Astrue*, No. 12-6622, 2014 WL 1281136, at *7 (E.D. Pa. Mar. 27, 2014) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV-TR"). A score in the range of 51 to 60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Id.*

that Plaintiff was incapable of even low stress work. *Id.*

In a March 4, 2014 report and a May 2014 questionnaire, Ms. Aramide noted major depressive disorder with psychotic features, panic disorder with agoraphobia, and a GAF score of 53. *Id.* at 596-603. In contrast to the October 30, 2013 report, however, Plaintiff was found to suffer only moderate limitations in several areas of workplace functioning, such as in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and the ability to perform at a consistent pace. *Id.* Ms. Aramide found marked limitation in Plaintiff's ability to understand, remember, and carry out detailed instructions and in her ability to respond to work pressures and changes in routine in a usual work setting. *Id.*

Records indicate Plaintiff's condition improved with treatment and medication from October 11, 2013 to March 18, 2014. *Id.* at 563. On March 18, 2014, Plaintiff reported that she was feeling much better, with improved sleep and appetite and only "mild" depression and anxiety. *Id.*

On October 9, 2012, Dr. Justin Fernando evaluated Plaintiff, at the request of the state agency, for her complaints of disc herniation and hypertension. *See id.* at 386-88. He found that Plaintiff's gait was normal; she accomplished heel-and-toe walking without difficulty; and her squatting was full and her station normal. *Id.* at 386-87. Dr. Fernando's diagnostic impression was "chronic lower back pain with unilateral subjective symptoms of radiculopathy (no clinical indication of disc or nerve involvement)." *Id.* He found some evidence of restricted mobility and stiffness, which he stated could explain the pain alleged by Plaintiff, but found no sign of disc abnormality or nerve impingement of the lumbar spine. *Id.*

On October 4, 2012, Steven Yalkowsky, Ph.D., a licensed psychologist, examined Plaintiff at the request of the state agency. *Id.* at 53, 382. Dr. Yalkowsky reported that during

the examination Plaintiff was pleasant and friendly, with intact social skills, and was adequately dressed and groomed. *Id.* Although Plaintiff appeared emotional and depressed during the examination, and cried frequently, her thought processes were logical, coherent, and goal directed and Plaintiff's cognitive ability was adequate. *Id.* Her memory functioning was adequate and she was able to recall and clearly describe past experiences in detail. *Id.* Dr. Yalkowsky observed no abnormal thought content or signs of serious psychopathology. *Id.* Dr. Yalkowsky's diagnostic impression was depression, with the need to rule out anxiety disorder, and he assigned a GAF of 55. *Id.* at 53, 384.

On November 21, 2012 Dr. Mary McLarnon, a state agency physician, reviewed the available medical evidence. *See id.* at 96-97. She completed a physical residual functional capacity assessment stating that Plaintiff was capable of lifting up to fifty pounds occasionally and twenty-five pounds frequently; standing, walking, or sitting for six hours in an eight-hour day; and performing unlimited pulling and pushing within the given weight restrictions. *Id.* In March 2013, Dr. Nancy Simpkins, a state agency physician, reviewed and affirmed these conclusions. *Id.* at 111-12.

On November 6, 2012 Brady Dalton, Ph.D., a state agency psychological consultant, reviewed the available medical evidence. *See id.* at 95. He concluded that Plaintiff was capable of carrying out simple and detailed instructions; sustaining attention through extended periods of time (up to two hours); following work-like procedures; and making simple work-related decisions. *Id.* at 98. In April 2013 Dr. Thomas Yared, a state agency psychiatrist, reviewed and affirmed these conclusions. *Id.* at 112-14.

## III. LEGAL STANDARD

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C. Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. *Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the Plaintiff has an impairment that limits her ability to work. *Id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. *Id.* If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *Id.* Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. *Id.*

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. *Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *Id.* at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA and that Plaintiff had not engaged in substantial gainful activity since March 24, 2012, the alleged onset date. *Id.* at 48. At steps two and three, the ALJ found Plaintiff's impairments of cervical and lumbar degenerative disc disease/HNP's, lumbar radiculopathy, hypertension, obesity, depression, anxiety, panic disorder without agoraphobia, and PTSD were "severe," but not severe enough to meet, either singly or in combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.* at 49.

The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform the exertional demands of medium work, except Plaintiff "cannot climb any ladders, ropes, or scaffolds," she can "climb ramps and stairs frequently and balance, stoop, kneel, crouch, and

crawl frequently," she "must avoid all exposure to hazards," and Plaintiff "can do simple routine work with only occasional public or co-worker contact." *Id.* at 51. To make this determination, the ALJ took into consideration "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* Specifically, the ALJ considered Plaintiff's testimony that she has anxiety and depression and that she feels overwhelmed with daily living. *Id.* at 52. The ALJ also considered Plaintiff's testimony and medical records regarding the bus accident in March 2012. *Id.* Further, the ALJ took into consideration the medical reports of Dr. Fernando, Dr. Chen, Dr. Debari, Dr. Yalkowsky, and Ms. Aramide from Plaintiff's treatment at Mount Carmel Guild. *See id.* at 51-56.

At step four, the ALJ found Plaintiff was incapable of performing past relevant work as a daycare worker. *Id.* at 56. At step five, the ALJ found there were jobs in significant numbers in the national economy that Plaintiff could perform. *Id.* at 57. The ALJ identified these jobs as: packager, dishwasher, and janitor. *Id.* at 56.

**B.  Analysis**

Plaintiff makes the following arguments in support of her contention that the ALJ's decision should be remanded: (1) the ALJ erred at step three by failing to explain why Plaintiff's impairments, considered singly and in combination, did not meet or equal a listed impairment; (2) the ALJ erred at step four by failing to sufficiently explain the RFC finding; and (3) the ALJ's hypothetical question to the vocational expert ("VE") failed to reflect all of the claimant's impairments that are supported by the record. *See generally* Plaintiff's Brief ("Pl. Br.") ECF No. 10. The Court will address each argument in turn.

   **1.  Step Three**

The listings assessed at step three describe impairments the Commissioner considers

10

severe enough to prevent an individual from engaging in any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 416.925(a). The listed impairments give rise to presumptive disability, i.e., if an individual meets a listing, she is considered to be disabled without consideration of whether she can perform work activity. *Id.* § 416.920(a)(4)(iii); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted). To be found presumptively disabled, a plaintiff must show all of the criteria for a listing have been met. 20 C.F.R. § 416.925(c)(3); *Zebley*, 493 U.S. at 530. If a plaintiff has two or more severe impairments but none that meets a listing, the ALJ must determine whether a claimant's combined symptoms are medically equivalent to a listed impairment. 20 C.F.R. § 404.1526(a).

Plaintiff argues that the ALJ failed to support her finding that Plaintiff's psychiatric impairments did not meet Listings 12.04 or 12.06 and that the ALJ failed to combine Plaintiff's obesity with each of her other impairments in performing the "medical equivalence" comparison. Pl. Br. at 17-23.

In evaluating the ALJ's decision at step three, this Court looks at the ALJ's decision as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) ("[The case law] does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of [the case law] is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."). Here, as the ALJ's findings were preceded by sufficient discussion of the relevant medical evidence and hearing testimony, the Court finds that the step three analysis was adequate.

Plaintiff argues that she is entitled to presumptive disability under Listings 12.04 and 12.06 because she suffers from depression and anxiety. Pl. Br. at 22. Listings 12.04 and 12.06, however, require more than a mere diagnosis of depression (12.04) or anxiety (12.06). Plaintiff

must also show that she meets the requirements of paragraph B or paragraph C of each listing. Paragraph B requires extreme limitation of one, or marked limitation of two, of the following: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; or the ability to adapt or manage oneself. C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B). Paragraph C requires medical documentation that Plaintiff's disorder has existed for two years or more and evidence that Plaintiff is both pursuing effective, ongoing medical treatment and is minimally able to adapt to new environments or demands that are not a part of her present daily life. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.04(C), 12.06(C).

Here, the ALJ found that Plaintiff did not meet the requirements of paragraph B or C of Listings 12.04 and 12.06. The ALJ noted that Plaintiff suffered from depression and anxiety; that nurse practitioner Aramide's October 30, 2013 report found that Plaintiff had been disabled due to depression since October 2011; and that the October 30 report found Plaintiff to have "marked" limitations in concentration, persistence, and pace. Tr. at 54. But the ALJ also noted that a March 4, 2014 report and a May 2014 questionnaire completed by Ms. Aramide and Ms. Miller, a social worker, classed several formerly "marked" limitations as only "moderate"; that records from October 11, 2013 to March 18, 2014 showed Plaintiff's anxiety and depression had improved with medication and treatment, *id.*; that Dr. Yalkowsky found Plaintiff to have adequate cognitive ability, *id.* at 53; and that Plaintiff was able to take public transportation independently, perform the activities of daily living, and interact with her children. *Id.* at 54-55. The ALJ's discussion of the medical evidence and hearing testimony sufficiently conveyed her reasons for finding that Plaintiff's psychiatric impairments were only moderate and that Plaintiff did not, therefore, meet Listing 12.04 or 12.06.

12

Finally, Plaintiff argues the ALJ failed to evaluate Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002). Pl. Br. at 17-22. The Third Circuit addressed this issue in *Diaz v. Commissioner of Social Security*, where the ALJ found obesity was a severe impairment at step two, but failed to assess the impact of obesity on the plaintiff's other impairments at step three. 577 F.3d 500, 503 (3d Cir. 2009). The court determined that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Id.* at 504. In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." *Id.*

Here, the ALJ notes that Plaintiff suffers from obesity as a severe condition and that "the combined effects of obesity with other impairments may be greater than might be expected without obesity." Tr. at 55. The ALJ goes on to discuss the severity of each of Plaintiff's other impairments in turn before concluding that her obesity, even when considered in combination with those impairments, does not result in a disabling limitation of functioning. Tr. at 55. This analysis is sufficient to permit meaningful judicial review of the decision. As noted above, the ALJ is limited to no "particular format" in conducting the step three analysis, *Jones*, 364 F.3d at 505, and "need not employ particular 'magic' words" in her decision. *Diaz*, 577 F.3d at 504. Accordingly, the Court finds that the ALJ's evaluation of obesity was adequate and that her step three analysis was supported by substantial evidence.

   2.   **Step Four**

Plaintiff argues that the ALJ erred at step four by failing to sufficiently explain the RFC analysis. Pl. Br. at 23-34. An RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

findings) and nonmedical evidence (e.g., daily activities, observations)." *Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P (S.S.A. July 2, 1996). Under the substantial evidence standard of review, the issue is whether sufficient evidence reasonably supports the ALJ's analysis. *See Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court finds that the ALJ's analysis is supported by substantial evidence.

First, Plaintiff challenges the ALJ's reliance on state agency opinion. Pl. Br. at 26-27. The ALJ found Plaintiff capable of the full range of medium work, and explained that in reaching this conclusion she afforded great weight to the opinions of the Department of Social Services ("DSS"). Tr. at 55. The ALJ is ultimately responsible for making the RFC determination. *See* 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c). She is "entitled to weigh all evidence in making [her] finding," *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011), and "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Id.* at 196 n.2. State agency opinions "merit significant consideration as well." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Here, the ALJ explained that she gave great weight to the opinions of DSS because they were consistent with the record as a whole. Tr. at 55. Specifically, the ALJ found the findings of DSS to be consistent with the opinions of Dr. Fernando, Dr. Koduah, and Dr. Kuo; with Plaintiff's testimony that she could live independently and perform the tasks of daily living; and with records from Mount Carmel Guild showing that Plaintiff improved with medication and treatment. *Id.* The opinions of Dr. Chen, Dr. Debari, and Ms. Aramide, on the other hand, were afforded less weight because they were not consistent with the record as a whole. *Id.* at 53-54. The ALJ's analysis is sufficient to permit meaningful judicial review and her decision is supported by substantial evidence.

Second, Plaintiff argues that the ALJ failed to give adequate consideration to Plaintiff's subjective complaints of pain in finding Plaintiff capable of the full range of medium work. Pl. Br. 27-34. The Court disagrees. A Plaintiff's subjective complaints should be given "great weight" and may not be disregarded unless there is contrary medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). But the ALJ must "ma[k]e specific findings of fact, including credibility, as to residual functional capacity." *Id.*

Here, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her physical symptoms were "not entirely credible." Tr. at 51. The decision makes clear that this finding rests on objective medical evidence: Dr. Fernando found no evidence of disc abnormality or nerve impingement of the lumbar spine, noted that Plaintiff's gait was normal and that she accomplished heel and toe walking without difficulty, and reported that Plaintiff exhibited a full range of motion of the hips, knees, and ankles, *id.* at 53; Dr. Koduah found "no evidence of lumbar herniation on two MRI studies" and "no evidence of any pathology," *id.*; and Dr. Kuo stated that MRIs of Plaintiff's neck and lumbar spine showed only mild disc disease. *Id.* Because the ALJ properly considered the whole record in assessing Plaintiff's subjective pain complaints, the Court finds that the RFC analysis was supported by substantial evidence.

### 3. Step Five

Finally, Plaintiff asserts that the ALJ's step five finding was not supported by substantial evidence because the hypothetical question asked to the vocational expert ("VE") did not reflect all of Plaintiff's credibly established impairments and limitations. Pl. Br. at 34-37. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that the ALJ must convey to the VE all of the credibly established limitations); *see also Ramirez v. Barnhart*, 372 F.3d, 546 (3d. Cir. 2004) (stating that when an ALJ incorporates a Plaintiff's limitations into a

15

hypothetical, "great specificity" and accuracy is required). Specifically, Plaintiff asserts that the ALJ's hypothetical to the VE, contemplating the ability to perform "simple routine work, [with] no more than occasional public and coworker contact," did not properly account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. Pl. Br. at 35-36.

An ALJ may ask a VE to "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560. Here, the ALJ first asked the VE to assume a hypothetical Plaintiff who:

> Could occasionally lift 50 pounds, frequently 25 pounds, stand or walk six hours a day, pushing and pulling within the same weight restrictions, and would be again [capable of] simple routine work, no more than occasional public and coworker contact, no ladders, ropes, scaffolds, no hazards such as dangerous machinery or heights, and no more than frequent ramps, stairs, balance, stoop, knee, crouch, crawl.

Tr. at 84. The VE found that this hypothetical person could perform the jobs of a packager, a dishwasher, and a janitor. *Id.* at 84-85. The ALJ then added further limitation of three absences every month. The VE responded that, considering those added limitations, there would be no jobs available in the regional or national economy, as a new hire, for someone of Plaintiff's age, experience, and educational level. *Id.* at 85.

At step three, the ALJ determined Plaintiff had moderate difficulties with regard to concentration, persistence, or pace. *Id.* at 50. The ALJ's hypothetical question to the VE must accurately convey all credibly established limitations. *See Green v. Colvin*, No. 14-1942, 2016 WL 1696797 at *3 (E.D. Pa. Apr. 27, 2016) (finding that an ALJ's RFC evaluation and hypothetical question were deficient because they failed to incorporate the ALJ's own findings that the claimant has mild limitations with concentration, persistence, or pace). Here, it is

unclear whether the ALJ sufficiently included her step three findings in the hypothetical question to the VE. The ALJ noted that Plaintiff could perform only "simple routine work, [with] no more than occasional public and coworker contact." Tr. at 84. This limitation to simple, routine, and low contact work does not appear to account for Plaintiff's difficulties in concentration, persistence, and pace as established by the RFC analysis. *See Ramirez*, 372 F.3d at 546 (hypothetical question to VE limiting Plaintiff to "simple one or two step tasks" failed to account for the "deficiencies in pace" noted by the ALJ at step three). On remand, the ALJ should include all of Plaintiff's credibly established impairments and limitations in her hypothetical questions to the VE.

## V. **CONCLUSION**

For the foregoing reasons, the ALJ's decision is affirmed in part, vacated in part, and the matter is remanded for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: September 11, 2017

_____
**CLAIRE C. CECCHI, U.S.D.J.**